**COMP**
JORGE L. SANCHEZ, ESQ.
Nevada Bar No. 10434
SANCHEZ LAW GROUP LTD.
930 S. Fourth Street, Suite 211
Las Vegas, NV 89101
Telephone: (702) 635-8529
Facsimile: (702) 537-2800
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEVADA

| | |
|---|---|
| LYDIA MARTINEZ,<br><br>    Plaintiff<br><br>v.<br><br>MGM MIRAGE RESORT HOTEL, d/b/a/ MIRAGE HOTEL, a Delaware Corporation, BARTENDERS & BEVERAGE DISPENSERS UNION LOCAL 165, an unincorporated entity, And DOES 1-1000<br><br>    Defendants | CVA NO.<br><br>**COMPLAINT PURSUANT TO §301, LABOR MANAGEMENT RELATIONS ACT, 29 U.S.C. §185 FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT, BREACH OF DUTY OF FAIR REPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW, Plaintiff LYDIA MARTINEZ by and through her attorney, JORGE L. SANCHEZ, Esq. of the law firm of SANCHEZ LAW GROUP Ltd., and pleads and alleges as follows:

### GENERAL ALLEGATIONS

1. Plaintiff, LYDIA MARTINEZ is a resident of Clark County, Nevada.

2. Defendant, MGM MIRAGE RESORT HOTEL, d/b/a MIRAGE HOTEL ("Mirage") is upon information and belief, an entity organized and existing under the laws of the State of Delaware with its principal place of business in Clark County, Nevada.

//

1

3. Defendant, Bartenders & Beverage Dispensers Union Local 165 ("Union") is upon information and believe an un-incorporated entity whose duly authorized agents and representatives are engaged in representing and act for and on behalf of employees in an industry that affects commerce. Furthermore, upon information and belief, the Union conducts business in Clark County, Nevada.

4. Plaintiff is informed, believes and thereon alleges that the true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 100 ["hereinafter referred to as 'DOES'"] are unknown to Plaintiff who therefore sues said Defendants by said fictitious names. Plaintiff is informed and alleges that each of the Defendants designated as DOES are responsible in some manner for the events and happenings described in the Complaint which actually caused or contributed to the damages to Plaintiff as alleged herein

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 29 U.S.C. 185(a).

6. Venue is proper in the District of Nevada because each Defendant conducts business in the Southern District of Nevada; and the all events alleged herein occurred in the District of Nevada.

## GENERAL ALLEGATIONS

7. Plaintiff is an erstwhile employee of the Mirage where she was employed as a bartender for 16 years. She was also a member of the Union and acted in the capacity as a union steward.

8. On or about July 17, 2008, Mirage Manager (Kokomos) requested Plaintiff to appear in her capacity as a union steward to attend a disciplinary proceeding against a waiter. After observance of the disciplinary action, the manager requested Plaintiff to sign the written disciplinary action. Plaintiff objected on the grounds that it falls outside the scope of her responsibility, it may constitute a breach of the Collective Bargaining Agreement (CBA), she

2

never had been requested to sign off on an employee's disciplinary action, and the possibility that her signature may be construed as union validation of the disciplinary action. Furthermore, the manager appeared to be annoyed when Plaintiff insisted on measures to ensure receipt of a copy of the disciplinary action since the copier was apparently malfunctioning.

9. The following day, on or about July 18, 2008, Plaintiff was contacted by management to attend a disciplinary action against a bartender (who worked at Revolutions). During this meeting, Plaintiff perceived irregularities in the disciplinary meeting that appeared to contravene the terms of the CBA. When Plaintiff informed management of such discrepancies, she was told that she was called only to observe. Plaintiff disagreed and remarked that reticence in the face of a CBA provision would be inconsistent with her duties and responsibilities as a shop steward.

10. A few hours later, Plaintiff reported for her shift. Shortly afterwards, the Kokomos manager called her a liar in front of customers (over alleged remarks concerning Plaintiff's use of a particular timeclock to punch in). Plaintiff attempted to find out what was the matter, she was threatened with insubordination. When later attempts to mollify the manager failed, Plaintiff became upset and went out on break.

11. While she was on break, she was accosted by Mirage's Food and Beverage Director. She was ordered to report to his office for a meeting. A beverage manager was in attendance as well. He inquired about her whereabouts and informed her they had been waiting to talk to her since the beginning of her shift. The Director accused Plaintiff of being insubordinate towards the Kokomos manager. For some undisclosed reason, he ordered Plaintiff to take a drug test. He refused to explain the basis for a drug test. Plaintiff complied under duress and with confidence that she would pass any urinalysis. Plaintiff spent several hours at a very unkempt facility to provide a urine sample. Afterwards, Plaintiff was advised she was suspended.

//

12. On or about July 29, 2008, Plaintiff reported to what was supposed to be a due process hearing. In attendance was Mirage management and a representative of the Union. The Mirage manager accused Plaintiff of not contacting the doctor who conducted the urinalysis. Plaintiff provided an account of her multiple messages. Then she was informed that her last break (on July 18th-prior to her suspension) was unauthorized.

13. As a continuation of this witch hunt, the manager informed Plaintiff that her urinalysis came back positive. Plaintiff vehemently denied any illicit drug use. She noted the problems with the facility that administered the test. She also mentioned that if the test somehow accurate, it was due to her legally prescribed medications. The manager open an employee handbook contrived a provision of the CBA as stating that all prescription medication had to be reported to the beverage. The manager quickly closed the handbook before Plaintiff could see it. The meeting concluded with no discussion or inquiry that led to the order for drug testing (i.e. confrontation by the Kokomos manager and the circumstances surrounding her attendance at employee disciplinary proceedings).

14. On or about August 7, 2008, Plaintiff was terminated. Plaintiff contacted the Union about initiating a grievance. She was flatly rejected and told that she would not work as a bartender in this town again.

**FIRST CLAIM**
**BREACH OF COLLECTIVE BARGAINING AGREEMENT**

20. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

21. Plaintiff's employment with Mirage was covered by a Collective Bargaining Agreement that was duly entered into between the Mirage and the Union. Plaintiff asserts "hybrid" claim pursuant to §301, Labor Management Relations Act ("LMRA") 29 U.S.C. §185(a) based upon the following breaches of the CBA committed by Mirage as set forth below.

//

//

4

22. Mirage breached Art. 8.01 of the CBA by discriminating against Plaintiff due to her activity on behalf the Union in the capacity of a union steward. The agreement stipulates in relevant part: "[t]here shall be no discrimination by the Employer or the Union against employee because of . . . or activity on behalf of the Union. . " Plaintiff's union activities were a causal factor for her termination due, which includes but not limited to, insubstantial infractions that were leveled at her as the basis of disciplinary action, contrived breaches of prescription drug policies that did not exist, and terminating the Plaintiff without just cause.

23. Mirage breached Art. 6.01(a) of the CBA for terminating the Plaintiff without just cause. Plaintiff did not engage in any acts that would justify termination. The CBA states that an employee may be subject to termination for proscribed and illicit act towards guests, failing to report to work or walking off the job, consuming drugs and alcohol while on duty or being under the influence during the employee's shift. The Mirage fired Plaintiff because she purportedly tested positive. Assuming that the Plaintiff tested positive, that is not a stipulated basis for immediate just cause termination. The Mirage tried to make a stretch to say that she tested positive "while on duty" However, as those terms are commonly understood, the status of "testing positive while on duty" does not mean or equate to acts "drug use while on duty" or "working under the influence." Mirage illicitly attempted to change "status" into actionable conduct by utilizing the terms –
testing positive while on duty. Furthermore, Plaintiff was not engaged in her normal assignment when she was tested.

24. In the alternative, without waiver, Mirage breached Art. 601(a) because Plaintiff did not imbibe or otherwise consume any controlled substances. Hence, the alleged test results are incorrect. Furthermore, Plaintiff was not afforded an opportunity to repudiate the test results or otherwise demonstrate the unreliability of the test results.

25. Mirage breached Art. 8.01(b) by ordering Plaintiff to take a drug test without

5

reasonable cause.  There was no basis for a drug testing in this instance, nor was Plaintiff duly apprised of the basis of any belief that she was under the influence.

26. Based upon the foregoing, as a direct and proximate result of the breach of the CBA, Mirage's actions have caused Plaintiff to suffer substantial harm and injury, and Plaintiff is entitled to damages in an amount to be determined at trial together with attorney's fees and costs.

## SECOND CLAIM
## BREACH OF GOOD FAITH AND FAIR DEALING

27. Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

28. Plaintiff asserts a §301 LMRA, 29 U.S.C. §185(a) claim based upon the Union's breach of its duty of fair representation in conjunction with her claim against the Mirage.

29. The Union flatly rejected Plaintiff's request to initiate a grievance and told her that her career was over.  It undertook little or no efforts to dispute or challenge the spurious allegation that were being leveled at her.  It undertook no measures although it was clear that Plaintiff was made the subject of a witch hunt as a result of her union activities.

30.  The Union made no effort to challenge the termination although the plain language of the CBA does not make testing positive for a controlled substance a reason for justification for termination.  In that regard, the Union failed to conduct any investigation or inquiry with respect to the drug test, how it was administered, whether or not there was just cause, or the underlying circumstances that led to the arbitrary order for testing.

31. Based upon the foregoing, as a direct and proximate result of the breach of the CBA, Mirage's actions have caused Plaintiff to suffer substantial harm and injury, and Plaintiff is entitled to damages in an amount to be determined at trial together with attorney's fees and costs.

6

//

WHEREFORE, Plaintiff Lydia Martinez hereby and respectfully requests that this Court grant judgment against Defendants as follows:

1. Actual damages plus interest as provided by law, including prejudgment interest, in sums to be determined at the time of trial;

2. General damages in sums to be determined at the time of trial;

3. Punitive and/or exemplary damages in an amount appropriate to punish and/or set an example of Defendants;

4. Reasonable attorneys' fees;

5. Cost of suit;

6. Prejudgment interest;

7. For any and all such other and further relief as the Court may deem just.

DATED this 18th day of October, 2008.

        SANCHEZ LAW GROUP Ltd.

        By /s/ Jorge L. Sanche
        JORGE L. SANCHEZ, ESQ.
        Nevada Bar No. 10434
        SANCHEZ LAW GROUP, LTD.
        930 S. Fourth Street, Suite 211
        Las Vegas, NV 89101
        Telephone: (702)635-8529
        Facsimile: (702) 537-2800
        Attorneys for Plaintiff